Good morning, Your Honors, and may it please the Court, David Henkin, appearing on behalf of Appellant Prutehi Litekyan, Save Ritidian, I'd like to reserve five minutes for rebuttal. We are here today because the District Court dismissed Prutehi Litekyan's challenge to the Air Force's failure to comply with the National Environmental Policy Act before making its decision in 2021 to continue the practice of disposing of expired bombs and other munitions by blowing them up on Turage Beach, which Prutehi Litekyan's members use for cultural, recreational, and other purposes. I will first discuss why the District Court erred in concluding it lacks subject matter For subject matter jurisdiction, the elephant in the room, which the District Court ignored, is that defendant's decision is already inflicting on the ground harm to Prutehi Litekyan, which easily establishes standing, ripeness, and finality. If I can ask you to turn for a moment to the other jurisdictional question, which is whether there's a final agency action that you've identified, what is, in your view, the final agency action? The final agency action is defendant's decision in 2021 that for the next permit term, they would conduct open burning and open detonation to manage their waste munitions at Anderson Air Force Base. And why is that appropriately characterized as a decision rather than the non-decision to just keep on doing what they've been doing for a long time? Well, the status quo in 2021 is that defendants were holding a permit from the Guam EPA for hazardous waste disposal. So this activity is regulated by that permit. And the status quo at that time was that the permit was expiring on September 3rd of 2021. And so prior to the expiration of the permit, they needed to make a decision about how they were going to manage the waste, because the status quo again is that after September 3rd, 2021, they would have to stop that. I guess they say, well, we didn't really make a decision. We simply continued to do what we were doing. But they did have to make a decision to fill out this piece of paper. Well, yes, that is their position. However, applying for renewal of a RECRA permit is not like auto paying your cell phone bill. It requires deliberation. It requires consideration, particularly because in this case, the defendants are using a particular method. But I don't think you're the answer to Judge Miller's question. You're not challenging the application itself as the final agency action. The application itself is the memorialization of the plan that defendants presented to Guam EPA for managing hazardous waste munitions for the next permit term, which is three years. And so particularly, you would agree that if you want to challenge that, you need to wait until after the decision is made by Guam EPA. I think you have challenged, or you can challenge it before Guam EPA now, but you can't challenge it for the agency until they actually have an answer back on that application. If we were, you know, this is not a case like Stone Manning, where the plaintiffs were trying to anticipate what the regulator would do. We're not challenging any regulatory decision. We're not challenging the outcome of the application. The application, rather, is the document that you look to, to see what their plan was. So that's very similar in Wild Fish Conservancy, this court talked about, that you can't just point to individual things that happened. We can't say they detonated on Monday, Tuesday, and Wednesday, and they had a- Under that theory, why couldn't, let's say, a memo was leaked that says, we're going to apply for another, you know, we're going to apply for another 10 years, on some 10-year-every, and then you say, well, they've made the decision, and we know that this memo's been leaked, and they haven't actually applied, but the decision has been made, and we know that, and so we can challenge that as a final agency action. Yes, Your Honor, if they had reached the consummation of their decision-making process, and they were going to apply for the permit, we could challenge that, and that's often the case. So you actually, so in the hypothetical I just gave, you think you actually, that would be final agency action? If they, if they memorialized their decision, and made a decision without the benefit of the, of the hard look at impacts and alternatives and public input- But I mean, every decision in an agency, the government is not one person, right, so it's not like, I'm going to have tacos for breakfast this morning, you know, it's not like, if the government wants to have tacos for breakfast, it's got like 14 steps it has to go through to have tacos for breakfast, right? And so, it seems to me like that memo, I thought it was kind of, at some point, it's final agency action, but not necessarily when some, when there's some memo that says, we're going to have tacos for breakfast, we've got to go through the six more steps in order to have tacos for breakfast. Well, perhaps I misunderstood Your Honor's question, I understood it to be that the memo reflected the decision that was made, that was a final, that it was a final decision. No, I was asking you whether that kind of memo would be a final, because that memo wouldn't actually mean that you could do it, because you actually have to get other, you have to get approvals and such, right, like that memo? Approvals within the government? No, approvals from outside the government, you actually have to get a license to do it. Well, in this case, they made a decision, they submitted an application, and under operation of the law, the regulation under RCRA 40 CFR 270.51d, just submitting the application itself triggered an extension of the 2018. That's your argument, I understand that's your argument, so if that's your argument, let me give you a hypothetical that I want to, let's say, let's say that they had a 10-year, a 10-year, you get a permit for 10 years to do the, but part of that 10-year permit says that if you don't conduct some activity every two years, that you, that the permit will just expire or go away, right, and so would your position then be that, you know, when they go out and every time they go out and conduct some activity, because that activity has the effect of extending, of ensuring that it's actually a 10-year permit and not a 2-year permit, or a 4-year permit, or a 6-year permit, that that is a final agency action subject to being, that going out and setting off, whatever they do, going off and setting off bombs is a final agency action, so instead of challenging it every 10 years, you now get to challenge it every 2 years, because every time they set, or actually more often than that, because any time during that 2 years, them setting off something is kind of resetting that 2-year, that 2-year clock. Because that's what this is, the reason I'm asking you, because that's what this is, except for instead of a determinate 2-year clock, and really you could characterize this as a 3-year permit, as a 3-year permit, or you could characterize this as an indeterminate amount of time permit that expires in 3, that will terminate in 3 years unless you take some action, which is applying for another permit. You're tying, you're, what I'm asking is why we should look, why we should look at what happened recently in applying for a new permit, instead of thinking that the reason they have a 3-year plus some intermediate amount of time is what they did 3 years ago, which you acknowledge are not challenging. Thank you for clarifying, Your Honor, now I understand the hypothetical better. So the difference between what you're proposing and the situation here is that the Air Force has no unilateral right to extend its permit indefinitely under the 2018 permit. So under the 2018 permit, they need to, and this is actually not just under the permit, it's under the RCRA regulations. They need to take an affirmative act, decide that we're going to continue to do open detonation. That needs to be a deliberative process, so this is very different than ONRC action versus BLM where the agency never entered into any type of evaluative process. But because it's open detonation, under the regulations, they need to evaluate at every technology that they can use, and so they do a deliberative process. And at the end of that, they make a decision, they apply, yes, they get a short-term automatic extension until the agency, the Guam EPA, makes a decision on it, but then it ends. And in your example, where every two years they need to do some activity, it is solely up to them whether it continues for the entire term of that permit. So in this case, we have both on-the-ground harm that is ongoing due to this deliberative process decision that they made. You lost me at distinguishing between the two on that, in my hypothetical, it's solely up to them. I mean, it's solely up to them, you're right, in my hypothetical, they go out at the one and a half years mark and they do a demolition. Maybe they do it because they're actually trying to get the two more years, or maybe they're doing it just because they need to blow some stuff up, right? And so, then they, in that example, they go out and they do it, and that is up to them, but the effect of that is that they get an extension, and that relates back to what they got two years earlier. I don't see how that's different than the fact that they go out, and in three years they say, we're going to, like we always do, we're going to extend this thing. And they go and they do all that work, and the effect of that is they get an extension for some indeterminate amount of time, and that's up to them. In both cases, it's totally up to them whether they ask for an extension. I'm not seeing how that is actually a distinction between what we're dealing with here and my hypothetical. Okay, well, the difference would be that it'd be, you know, under your hypothetical, for the term of the permit, they could keep extending it, and in this situation, they have made a deliberative decision to seek a new permit term, to seek a different permit. So in the first one, they're just offering... I mean, isn't one, if I understand the hypothetical, which I'm not sure I do, that under the actual circumstances, they don't do anything, then they can't continue to do the detonations that they were doing? In other words, they don't have any authority, there's a stop. Yes. You are, and therefore, and your complaint alleges that they made a decision. Now, they seem to be saying, we didn't actually make a decision, and that would be a defense, maybe. But why isn't the fact that... Although the government maintains that you switched gears as to what you were saying was the decision, as far as I can tell, the complaint says that the decision is deciding to submit an application, which you say necessarily entails the decision to continue, that in the next three years, they want to detonate. So I don't understand any contradiction, and I don't... I'm not sure about why Judge Van Dyke's hypothetical doesn't leave out the stop. In other words, isn't the stop the critical thing, the fact that if they don't do it, they're not going to be able to do this thing? Yes, that's absolutely correct. They'll blow something up in my hypothetical in two years. They won't be... So that's why I use that hypothetical, because it's just, say, three days from two years, and if you don't blow something up, you will not be able to continue on your, what you could call a 10-year permit, but what you could also call a two-year permit, plus the ability to get two-year extensions automatically when you take an action. I understood, Your Honor, but the difference is that under your hypothetical, they can do that up until the end of the permit, and then they're done at the end of the 10 years. No, they can do it for... If you actually read the fine print in my hypothetical, they can only do it for two years if you don't do something, if you don't take a specific action. Right, so if they keep taking actions, they can keep operating under the permit, so they make that decision. If they don't do anything for two years, it stops. But at the end of that, the permit stops, so those are just the terms of the permit. In this situation... At the end of the two years or the end of the... I think the reason that this feels like a strange final agency action is because even when they make the decision, they can't necessarily do it. Well, they... Let's start... They're making a decision to ask to do it. Well, there are two different bases for, let's say, standing and ripeness in this case. So because they submitted an application, just submitting the application, there's an automatic extension, but they have also, for the purposes of procedural injury, they have created the circumstances under which there is a threat of another permit. If they had never applied, the permit would come to an end, and they've created that threat. And so under Idaho Conservation League, this court has made it clear that when you have a procedural injury, which is the injury that comes when defendants make a decision uninformed, uninformed by NEPA, we don't need to prove that there's going to be actual threat. It can be threatened... Or actual injury. It can be threatened. It can be contingent. Let me ask you about that. Because it's actually... That alternative theory, let's say they weren't blowing stuff up because they didn't have a permit from Guam. They were... They just decided they're going to start doing this. And so they make a decision they want to do it, and they apply for the permit. But they can't do it until they finally get an answer back on the permit. You're saying that you would be able to challenge that now, and you wouldn't have to wait to see whether or not that permit would get... Whether or not that permit would be approved. Yes. That's indistinguishable from the situation at Idaho Conservation League, and the situation in Citizens for Better Forestry, where there was no site-specific, on-the-ground action even contemplated at that point. There was a long chain of causation. And this court said for procedural injury, the question is whether defendant's action creates the risk, through their uninformed decision-making, that a better decision wouldn't. And I'd like to just... I suppose it's probably not unusual that the government makes a decision to do something, but never actually does it. Money doesn't come, or who knows why. I'm not sure I understand the question. In other words, the decision to do something always requires, after it's made, and after the NEPA procedures are gone through, is always in some sense contingent, or often, i.e. you have to get the money, and you have to buy the land, and so on. That's correct. So, in Idaho Conservation League, the fact that Congress might need to do some appropriations, in order for there to eventually be on-the-ground harm, was no bar to standing or ripeness. In Friedland Brothers, the fact that the agency had made an initial decision to fund something, but hadn't yet decided definitively to do it, was a trigger for NEPA. And it's important to remember that NEPA applies to continuing activities. So, at 40 CFR 1508.1Q2, NEPA expressly applies to continuing activities. And the only question is, for a NEPA trigger, is whether there is a decision subject to federal control and responsibility. So, in this case, that is precisely the way of happening. You know, respectfully, Judge Van Dyke, applying for a new permit, going through, making a decision-making process that you need to justify, and each permit renewal, whether open detonation is justified, that is an agency decision. Another interpretation... On that point, can I ask you to go back to ONRC, which you brought up a little while ago? I wasn't sure I got your distinction for why this is different from a decision not to change the status quo. Well, because the status quo... So, ONRC involved the situation in which the Bureau of Land Management was petitioned to take an action, and they said, we're not even going to think about it. We want you to wait until site-specific action. So, they didn't change the status quo, and the court found it significant on page 1136 of that decision that they didn't enter into an evaluative process. Here, there's no question, but the defendants entered into an evaluative process, particularly because they're dealing with open detonation. And my friend, in his brief, claims that they did an evaluative process about alternate technologies. And so, that's very different than doing nothing. And you think that was required to get the RCRA permit? Yes. And is that the statutory requirement that, in applying for a permit, you have to... It's a regulatory requirement because EPA generally banned this practice in 1980 because it's so dangerous to the environment and human health, and they made a narrow exemption for waste munitions, which are defined as ones that can't be treated any other way. So, that's the EPA memo that we referenced in our reply brief, where they said, under existing law, an applicant needs to continually be re-advised, needs to evaluate that at permit issuance and renewal. Can I ask you, this is a somewhat different hypothetical, so, you know, the Forest Service has lots of roads in the forest, many of them unpaved, and so they require periodic maintenance, right, or else they'll get overgrown and there won't be a road there anymore. So, if they have a program that, you know, every few years, they contract with somebody to come and regrade the road and clear away the brush, is the issuance of that contract... Is that a challengeable final agency action, in your view? Well, it would be if... So, for things like that, those are not decisions. Those are decisions made by federal government, and it's very broad underneath of what a decision is. The way that agencies deal with that is through the issuance of categorical exclusions for things that are relatively insignificant and repeat, and they need to actually make a finding that, as a collective, these road maintenance activities or other things are not going to be an environmental problem. But if you contrast that with, I mean, where's the Bright Lion? So that's the NEPA... Right, OK, the categorical exclusion takes care of the NEPA question. But you think it's a final agency action when all you're doing is... sort of an implementation of a... You know, the plan was decided years ago, we're going to maintain the roads as necessary, and each time you do something to implement that plan, you think that's a final action? I mean, each time you do something to implement the plan, no. The creation of the plan, yes. So here they have created a plan for what they're going to do with munitions for the next three years in Anderson Air Force Base, and they have to make a plan under the substantive statute that they fall under, which is RCRA, and I'd like to direct the court to the Air Force's categorical exemption list, which is referenced in our brief, and that's 32 CFR Part 989, Appendix B, A2.3.7, and, you know, it deals with this situation, Your Honour. When you have a pre-existing activity and you have a decision to continue with the pre-existing activity, it falls under NEPA. It's an agency action. It's defined as a major federal action, and then if they've already done an adequate environmental review, they don't need to do another one, but they do need to consider that, and they also need to consider whether there are any changes to their operation, in which case they would have to do at least an environmental assessment. So, you know, under the hypothetical from Judge Van Dyck, NEPA just wouldn't function if agencies could make these types of decisions, you know, without having to go through the process, and if you look at the Air Force's categorical exclusion list, it does include things like routine maintenance of weapons. In my hypothetical, NEPA would apply at the beginning of the 10-year process, at each 10-year process, but my question was whether it would apply at every two years, and I think I saw your answer. You're trying to distinguish it, so I assume your answer is that it wouldn't apply every two years. It would not apply because of the— and thank you for recognizing it would apply at the beginning of the 10-year process, because here the Air Force has never done it, at the beginning of any three-year process. We're just challenging the 2021 decision, but the important thing to realize here is that it applies at the beginning of the 10-year process because they are making a plan for what they're going to do during the next 10 years, and so in the next— When you—this application, which is extremely long, I presume it's not exactly the same as the last one. It is, in all material respects, the same as the last one. Word for word? I mean, it doesn't have different— they don't need to respond to any changes, for example, in the environment or different mitigation, or there's nothing in it that has to change or should change or could change? They are obliged to, Your Honor, including they were required to evaluate their use of open detonation in light of the studies that came out since their last permit in 2019 of the U.S. EPA and the National Academy of Science, that the vast majority of their munitions should be treatable by alternate processes. We don't believe that they did that. That would be a challenge. That would be a RCRA challenge at the end of that permitting process, so that's premature, but for purposes of NEPA, they did not do that analysis. My question is exactly whether they can simply say, okay, we're just going to do this because we did it before, or whether they are required, even by the application process itself, to rethink whether they're going to do it again and under what circumstances. They are, and I see that I'm well over my time. Thank you. You are. We've taken you past your time, but we'll give you three minutes for rebuttal. Thank you, Your Honor. Mr. Stockman. May it please the Court. My name is Robert Stockman, here on behalf of the federal defendants. We ask this Court to affirm the district court's decision, and I'll start with finality, because that was the focus at the beginning of the argument. I think one of the challenges with plaintiff's argument is that they do shift back and forth on what they are talking about. I didn't see the shift. It seems to me the complaint was clear that what they're challenging is the decision to file the application, not the application. Go ahead. They're not challenging the application. Let's say they've conceded that. There's multiple reasons they couldn't challenge that decision. First, we don't think it happened in the sense that there is. There's a complaint. This is a motion to dismiss. They say it happened. It's sort of logical that it had happened, but if you can prove it didn't happen, go prove it. Part of this is the lack of clarity about what they mean by a decision to submit the application. There was a decision to submit the application. The application was submitted. They filled out the application. But that is the application. You can challenge the application, or you can't challenge the application, but that would be challenging the application. So the question is, can you challenge some indeterminate thing to decide to fill out the application? Which necessarily encompasses the decision to continue to do in the next three years the detonation. So there's several reasons. It had to be a decision to do that, or you wouldn't fill out the application. Well, I think the decision to do the detonations has been going on for decades. Well, the detonations have been going on for decades, but I would hate to think that the government, because it decided something 20 years ago, never thinks about it again. No, but every time the government thinks about a thing, that's not a new final agency action. And that it did something. But the thing they did was the application, right? But let's think about the law here for a second. The decision, imagining there was one, would be under the text of the APA the kind of procedural or intermediate or preliminary thing that gets subsumed in the application process, right? But the application is not to itself. This is very different than the kinds of cases in which the agency itself is issuing the permit. And somebody is trying to determine, to challenge as a final agency action some preliminary to issuing the permit. That's not what's going on here. The agency itself is not issuing the permit. It's not in power to. So here I would recommend the court look at industrial customers, which is a decision by this court, where Bonneville Power made a record of decision deciding to change its rate request to FERC. That was much more formalized than the ambiguous thing being challenged here. FERC was actually not allowed to reconsider the details of what Bonneville Power asked for in that process. FERC had its own process. But still the court recognized that Bonneville Power's submission was not a final agency action. I mean, that was under the Bonneville Power specific review process, but the court said this is like final agency action. This is a finality inquiry. Well, it's almost like they understand that they need to be doing something more than just challenging a decision to submit a permit because they really emphasize the fact that you get to keep blowing stuff up because you submitted this permit, which was what led me to my hypothetical that can't just be the fact that something causes you to keep blowing stuff up, that you get to challenge that thing instead of the decision that was made years ago. So, I mean, maybe I do see it differently than my colleague in that it does seem like they're kind of making two different arguments. One is that they kind of seem to be saying they get to just challenge this decision, sort of ignoring that you get to keep blowing stuff up, but then they rush to saying, yeah, so it is a little bit of a moving target, I feel like. And I think that's very important because to the extent they've tried to argue there are legal consequences here, which is a requirement of finality, they always point to, well, they can continue the operations because they submitted the permit application, right? So to the extent they're saying we did something that has any consequence here, it's the application. Well, that's one of the things they say, but they also say that the legal implication is, the legal right is the right, essentially, to have a NEPA study done at that point. So I think Summers does not allow that line of argument anymore, right? I mean, the Supreme Court has said, in Summers and Spokio and other cases, that just having a right to a procedure is not enough to establish standing, right? Well, Spokio was not about procedures, as I recall, and NEPA is a somewhat unique case in that regard. So Summers is definitely on point. And the plaintiffs made these types of arguments, right? The plaintiffs said they're gonna overlook environmental consequences, and the court said that is not enough to establish standing, right? And this court in Wray applied that, Summers, and said, you know, it's not enough to say we're not gonna do, they're not gonna do this procedure. You have to actually identify the injury that is caused by the action. And the problem for them is that the thing they're trying to challenge doesn't cause that injury. So, Austin, step back for a second. Imagine the federal defendants had decided to continue, and they'd filled out the application, but then they didn't send it in. I don't think our argument would be that the RCRA application remained in force, and I don't think Guam PPA would think it did, right? I mean, so that nebulous decision that was allegedly made wouldn't be having these effects, that they're arguing are the effects. There's never a final agency action after the first decision that was made 30 years ago or 40 years ago to do this? There's never one? Or that after the application is approved, there'll be one, or what? So, first, they should raise all their concerns in the application process before Guam PPA, and then there is a specific judicial recourse there. But I will return to your... I think the question is, each case is, of course, factual and contextual. I'm not saying no final agency action will ever occur. I want to know, in this case, when would the final agency action be or have been? Well, so there isn't currently any broad process re-evaluating this. The decision to engage in these activities happened a long time ago. The agency has repeatedly reviewed the decision and made changes. Those reviews, and exactly, and my understanding underneath it in general is that those kinds of reconsiderations are final agency actions. I mean, forest plans and determinations to cut these trees or those trees under the forest plan. So it varies depending on what the agency was doing. So in this context, the agency has often done its environmental analysis in the context of the RCRA permitting process. But it also did consult with wildlife agencies. I mean, this sort of gets into the other issue, but those decisions, the RCRA process is after they've made the decision. They're essentially justifying their decision, and it's not an open process. Prior to their making a decision, the way NEPA is, where they're supposed to be considering a set of alternatives prior to making a decision and not having public participation before they make the decision. So I think the issue with it should have been considered, they often say the go or no go. That was decades ago. This is happening. It's been happening. It's crucial. But as you said, they've made changes. They're not doing exactly the same thing. They originally were doing two different things, and now they're only doing one, and so on. So if plaintiffs want to challenge one of those and establish that a final agency action occurred, that is plaintiff's burden. I do not know of a final agency action that has occurred within the statute of limitations or that is going to occur shortly, but there is the RCRA process. But why isn't the... I mean, your friend on the other side says that in order to apply for the permit, the RCRA regulations require them to sort of undertake a deliberation about possible alternatives. So it's not just continuing what we've been doing all along. They were required to think about doing something new. Why isn't that? So in our view, that's subsumed within the RCRA process. The process the agency went through was the RCRA process. So the question has to be, can they challenge the RCRA permit, which they now have said they aren't, and we think they can't. The RCRA permit application, you mean? Yes, the application. I don't think... I'm not aware of any precedent where a court says, the agency issued this document. Plaintiffs can't challenge that document, but they can tear out or infer that decisions were made in reaching that outcome, and we're going to review that. And from an APA perspective, that would be very difficult. But what about the pleading problem here? They have alleged that a decision was made. It certainly seems fairly plausible that a decision had to be made. It is what's certainly possible for the agency, for the Air Force to decide they weren't going to do this anymore. So I would hope that somebody, before filling out this application, made a decision that we are going to continue to do this, and so it's at least a plausible allegation and a complaint. And you can defend it and prove that there was no decision. You just went blindly forward. I want to be clear. To the extent the argument is the agency decided to submit the application, that is not... But you decided to continue doing what you were doing. And you're free to prove that, as I say, you never sat down and did that. You just blindly decided to continue. But it's in the complaint that there was a decision. The complaint said they decided to submit an application. Right. And that doesn't include deciding to continue to do it? So that is true. But that is subsumed within the application, and that is not a final agency action, right? A decision to fill out an application is not a final agency action because the Air Force doesn't have any power over the RCRA permitting process, right? That didn't extend the RCRA permit. There's no consequence that flows from an ambient decision. Not a fair inference from the fact that there was a decision to fill out the application and that there was a decision to continue to do the thing that you're filling out the application to do. That you want to do the thing that you're filling out the application to let you do? That gets us to a different line of argument, which is the ongoing activities argument. And there, I think, this Court's decision in ONRC, which we... Well, actually, I don't understand how it's different. I think this ongoing activities argument is the only argument you have as to why there isn't a final agency action. You're saying that it's not this decision. It was the decision 20 years ago, and everything since then is just the same thing. That is the final agency action. Every ongoing activity the government engages in involves numerous steps in implementation and compliance with a wide variety of federal statutes, right? Here, it's RCRA, but there's numerous federal statutes. I am not aware of any precedent that every time an agency in implementing a broader thing goes and complies with each step, that reopens the whole broader thing. And that would have very broad implications. But this isn't just a step. This is a decision to do the whole thing. I mean, in other words, the application is not just a step. The application says, for the next three years, we want to do X. We have decided to fill out an application saying, for the next three years, we want to do X, which means you must have made a decision that, for the next three years, you do want to do X. I think the legal consequences don't flow from the ambient decision. Also, I don't know what we'd be reviewing. What's the administrative record we submit for an unidentified nebulous decision? What would the court review as the rationale? I mean, the challenge is that when the government makes decisions, it is my thing about the breakfast tacos. Any government decision of any consequence requires a bunch of steps. And so the challenge is, if you want to allow people to challenge that, you can't just let them challenge it at any given step. You have to decide. My understanding was that was the reason why we require that a legal consequence flow from it, so that you don't just, at step two, when you still have seven steps to go through, you just get to challenge it at that step. And here, I can't see any legal consequence flowing from this yet, until after the permit is approved, except for their argument that you can keep blowing stuff up. But then the core question becomes, is that a legal consequence flowing from this decision now, or is that a legal consequence flowing from the decision now, I guess, four years ago? We see that consequence as flowing, first of all, from the permit from 2018, which is what's still— No, because if they hadn't filed the application, they wouldn't have been able to do it. But also, in combination with Guam EPA's regulations, and then the application triggers it, but also that kind of practical consequence to allow an administrative process, if that were enough to trigger finality, huge numbers of licensing processes would themselves be final at the beginning, because when people renew licenses, the general rule under the EPA and under many federal schemes is they get to continue to operate under the old license until the new one has been ruled on. And if it were the case that the application was then considered because it has a legal consequence under that theory, they'd all be final agency action. Well, if you file—if you seek a permit, say a water permit from a federal agency, then the issuance of the permit is a final agency action, right? Okay. And the reason this is an oddity is because it's not the federal government that's providing the license. Yes. So the way you're constructing things, although ordinarily there would be eventually a final agency action that could be challenged under NEPA if there wasn't a NEPA process, you're essentially saying there's never a final agency action and there's never a NEPA requirement because of the fact that it isn't the federal government that's issuing the license, even though they have to make a decision to do it and to seek the license. And so the environmental decision-making at the Air Force level should be the same as if it were the Air Force itself or the EPA that was issuing the license. I'm not aware of any precedent where that has been— Well, fine, but logically, all right? Because you're setting the— I don't know if there's an exactly analogous situation. I will look, but I don't know. But what I do know is that the way you're arguing it, because of the structure of this thing, while there would otherwise be a final agency action, now there never is one. So they should raise their NEPA concerns in the RCRA process, and when the RCRA permit is reviewed, they should brief those concerns. Except that the whole point that's being made here by your opponents is that the decision has been made, and the whole point of NEPA is to have the process before the decision has been made by the federal agency. Guam is not the federal agency. It's definitely not a major federal action because it's not being made by the federal government. So the thing is, they— I think that that does— They would like a NEPA process to occur. Plaintiffs often want a NEPA process to occur. To establish that a NEPA process must have occurred, they have to challenge a final agency action. It has to be a major federal action. We don't believe they've met that burden. And they can't evade that just because— Therefore, the Air Force could evade the responsibility it would otherwise have to have an open decision-making process that takes into account environmental concerns with the EIA or EIS and public participation and so on, ever. So with ongoing activities, there's often a question about how often should it be opened up? How often should the agency reconsider them? And it is a case-by-case determination, but a plaintiff can't just say, well, we want this decision now, so we're finding something else you did, and we're saying that's our hook. But we're not challenging that. We're challenging the decision you made that's inferred from that, and that's what we're challenging, and therefore your ongoing activity opens up. I don't think that is a workable process. Is there any process available to the plaintiffs? Is there some sort of petition they can file to ask for— They can always— —something that would result in a reviewable decision? First, they should participate in the RCRA process. Okay, but that's before Guam, right? But also, they can ask the agency to prepare a NEPA analysis. I mean, there's— And if the agency says no, is that a reviewable? I don't know. I apologize for that. They didn't raise that possibility. What about if the permit issues? Would that be a point where they could say— I know your position is that NEPA doesn't apply here, but could they make the argument that's a final agency action? Now there's a final— because there's legal consequences that flow because it's been consummated. The Air Force wanted to do something, but they had to ask for a permit. Now they got the permit. Now we're at a final point. What about at that point? So because Guam is an authorized entity, a state, they would have to pursue that under Guam's procedures. But they could raise the argument, this all was flawed. They should have done a NEPA analysis. And then that would be fully briefed, and that would raise a host of questions, including our major substantive argument, which is that we think that NEPA does not apply to the RCRA permitting process. And then that would be one of the things that would be raised in that process. I see my time is almost up. I didn't touch on many of the things I would like to, but if there's anything in particular the court would like to discuss. Thank you. My friend tries to conflate the separate duties under NEPA for an action agency like the Air Force and a permitting or regulatory agency that would be the US EPA here if they were involved. And they are separate. NEPA imposes on every agency the obligation to comply with NEPA to the fullest extent possible. And the legislative history that's cited in the brief, both their brief at the end and our brief from the congressional record, makes it clear that when Congress chose the term to the fullest extent possible, it expected every agency to comply with NEPA unless there were other statutes that prevented it from doing so. Why did that exist before us at this point? If we agreed with you on all of the points you're arguing, would we conclude that there needs to be a NEPA process or would that still be an open question as to whether there was, for example, a major federal action of the kind that triggers NEPA? That question doesn't seem to be in this mix right now. And since Judge Watson decided that there wasn't finality and there wasn't ripe and so on, he never addressed it either. So our bottom line here would be not ultimately to conclude whether the NEPA process was required. Is that right? That's right. You would remand for a decision on the merits if that's what we ask you to do. I just want to make clear that there's a difference between the permitting agency and the action agency. So this is kind of like Ramsey v. Cantor on its head. In Ramsey v. Cantor, this court said that the permitting agency that normally wouldn't need to do any NEPA needed to do NEPA because there was no downstream federal agency to do it. Here there's no downstream federal agency to do it either, even if it was okay for what the regulating agency does under NEPA to substitute for the permitting agency. But more importantly, there's the timing issue, and the timing issue is at 40 CFR 1502.5. And it says for every agency, including the action agency, you need to do NEPA early in the process so it can be an important part of your decision-making process rather than justifying a decision already made. So that's the problem, Judge Van Dyke, with waiting until the end of the RECFA process to raise a NEPA claim because... There's a distinction between when you need to do NEPA, which obviously you need to do it early, and the statute says you need to do it early, versus when you get the challenge, right? Like, I mean, if you just took from that that you always get, you know, it's required early, so, you know, as soon as we get a whisper that an agency's even considering something and they haven't started NEPA, then we get the challenge. I mean, that's obviously not correct. There's a distinction between those two questions. That's correct, but by the time that it submitted its application, the Air Force had already made up its mind. With respect to Summer, in Summer, the reason the Supreme Court said it was a procedural right in vacuo is that there had been a settlement, and so the only area of the forest where the plaintiff actually had any demonstrated concern had already been addressed, and that's at page 494 of the decision. And lastly, as far as the record... Oh, I see I'm over my time. You can wrap up. Just as far as the record, there was a question, well, what would the record look like here? Well, just look at the Air Force's own regulations, where they say if you make a decision about a continuing activity, like here, it is a continuing activity, you need to make sure that you've done adequate analysis, the analysis that was required of the project. And if you haven't, you need to do at least an EA, and that's the regulation that we've already discussed. So unless there are any further questions... Looks like there are not. We respectfully ask you to reverse and remand. Thank you for your time. Thank you. We thank both counsel for their arguments. The case is submitted. We're adjourned.
judges: BERZON, MILLER, VANDYKE